UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60334-RS

E.C. RUFF MARINE, INC.,

    Plaintiff,

v.

M/V "*BELLA GIORNATA*," 89' Lazzara,
motor vessel, her boats, engines, tackle,
equipment, apparel, furnishings, freights,
appurtenances, and all fixtures and other
necessaries there unto appertaining and
belonging to the vessel, *in rem*; and
BELLA GIORNATA II, LLC, *in personam*,

    Defendants.
_____/

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Liability on Counts I and II of Plaintiff's Second Amended Verified Complaint [DE 47] (the "Motion"), Defendant's Opposition [DE 49], and Plaintiff's Reply [DE 53]. For the reasons that follow, Plaintiff's Motion is denied.

**I.    MATERIAL FACTS**

This is an admiralty action arising from the alleged breach of a written agreement to perform repairs to the M/V Bella Giornata (the "Vessel"), a 1989 Lazzara motor vessel. Plaintiff is E.C. Ruff Marine, Inc., a Florida corporation with its principal place of business in Pembroke Pines, Florida. Defendant Vessel is located within the Southern District of Florida in Delray

Beach, Florida. Defendant Bella Giornata II, LLC (the "Defendant" or the "Vessel Owner"), a Florida limited liability company, is the owner of the Vessel.[1]

In late 2019, the hydraulic system on the Vessel had been losing power and displaying low pressure warnings on its stabilizers. Although there were no leaks to the hydraulic system anywhere on board, the Vessel Owner and the Vessel's captain, Jason Embler, decided to have the system repaired. They hired Plaintiff to perform the repairs to the Vessel. The parties executed a written agreement outlining the parameters of the work to be performed. Plaintiff was hired to repair and flush the Vessel's hydraulic system and rebuild or replace certain associated components. Plaintiff began work on the Vessel in October 2019 and finished in January 2020.

At the conclusion of Plaintiff's work, Plaintiff tendered multiple demands for payment from Defendant. However, Defendant refused to pay Plaintiff. Instead, on April 6, 2020, Defendant sent a letter to Plaintiff, written by Captain Embler, which detailed Defendant's rationale for delaying payment and outlined several alleged errors with Plaintiff's work. According to Defendant, much of the work that Plaintiff performed was not done correctly or in a workmanlike manner and had to be re-done by a third-party company hired by Defendant after January 2020. (Def.'s Ex. A at 2 [DE 48-1].) According to Defendant, after Plaintiff's work was completed, the Vessel's hydraulic system was nonfunctional and began to leak fluids in several locations for the first time. (Pl.'s Ex. B at 4 [DE 47-3].) Certain components that were to be rebuilt or replaced were installed backwards. (*Id.*) The hydraulic system itself was improperly re-installed at the conclusion of Plaintiff's work. (*Id.*) Additionally, Defendant claims that Plaintiff issued some invoices to fix the improper work Plaintiff had performed earlier in the process. (*Id.*) Several invoices listed property management fees which Defendant claims were never part of the

---

[1] The Court omits citations to the record where a fact is undisputed.

parties' agreement. (*Id.*) And certain overcharges were issued for overtime, labor, and hydraulic fluid which, again, Defendant claims were never part of the parties' agreement. (*Id.*) At the conclusion of Defendant's letter to Plaintiff, Defendant states that "your company has not met a single standard and did not complete the job." (*Id.* at 8.)

Plaintiff denies any improper work was performed on the Vessel and demands payment in the amount of $50,915.74 from Defendant for its repair services. (Ex. A to Pl.'s Reply [DE 53-1].) Defendant has thus far refused to tender payment to Plaintiff due to the alleged improper and unworkmanlike repairs that Plaintiff made to the Vessel. (Pl.'s Ex. B.) Additionally, Defendant has submitted evidence from a marine consultant and surveyor which states that Plaintiff was incapable of properly trouble shooting and completing the repairs in a timely, professional manner, as evidenced by activity logs detailing time billed repairing its own mistakes. (Def.'s Ex. A at 15.)

Plaintiff filed its operative Second Amended Verified Complaint [DE 36] against Defendants on January 14, 2022.[2] The Complaint brings three counts: (1) Foreclosure of Maritime Necessaries Lien against Defendant Vessel; (2) Breach of Contract against Defendant Vessel Owner; and (3) Unjust Enrichment against Defendant Vessel Owner. In turn, Defendant has filed a counterclaim against Plaintiff for breach of contract.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[G]enuine

---

[2] Plaintiff amended its complaint once to include an unknown "John Doe" defendant as a stand-in for the Vessel's owner [DE 4]; the Second Amended Verified Complaint removes unknown parties and adds Vessel Owner as a Defendant.

3

disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal marks and citation omitted). A fact is material if, under the applicable substantive law, it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the initial responsibility of supporting its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex* 477 U.S. at 324. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III.   DISCUSSION

Plaintiff brings an *in rem* admiralty action against the Vessel and an *in personam* action in contract against its owner. An *in rem* admiralty proceeding requires as its basis a maritime lien. *The Rock Island Bridge*, 73 U.S. 213, 215 (1867). "A maritime lien is a special property right in

a ship given to a creditor by law as security for a debt or claim," and it attaches "the moment the debt arises." *Dresden Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1272 (11th Cir. 2006) (citing *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1247 (11th Cir. 1999)). A maritime lien converts the vessel itself into the obligor and allows injured parties to proceed against it directly. *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010). These proceedings are referred to as *in rem* proceedings.

The Federal Maritime Lien Act, 46 U.S.C. §§ 31341-31343 (the "Act"), grants maritime liens to individuals based on their relationship to, or service of, a vessel. For example, the Act grants a maritime lien to "a person providing necessaries to a vessel." 46 U.S.C. § 31342(a)(1). "Necessaries includes repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). The Act then grants maritime lienholders the right to "bring a civil action *in rem* to enforce the lien." 46 U.S.C. § 31342(a)(2).

The parties do not dispute that the case is properly before the Court based on the Federal Maritime Lien Act, 46 U.S.C. §§ 31341-31343, and the Court's admiralty jurisdiction, 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction."). Under the Court's admiralty jurisdiction, *in personam* and *in rem* actions may arise from the same claim and may be brought separately or in the same suit. Supplemental Admiralty Rule C(1)(b).

Turning now to the case at bar, Plaintiff moves for summary judgment on Counts I and II of its Second Amended Verified Complaint. Count I is an *in rem* action against the Vessel for foreclosure of a maritime necessaries lien, while Count II is a breach of contract claim against Vessel Owner. The Court will address these claims separately.

### A. Foreclosure of Maritime Necessaries Lien

In an *in rem* action to enforce a maritime lien against a vessel, a plaintiff must establish: (1) that it provided "necessaries" within the meaning of the Federal Maritime Lien Act, 46 U.S.C § 31301, (2) at a reasonable price, (3) to the vessel, (4) at the direction of the vessel's owner or agent. *S.E.L. Maduro (Florida), Inc. v. M/V Antonio De Gastaneta*, 833 F.2d 1477, 1482 (11th Cir. 1987). The "reasonableness" of charges in the maritime context is measured by whether they are "customary" in the industry, *Ex parte Easton*, 95 U.S. 68, 77 (1877), and "in accord with prevailing charges for the work done and the materials furnished," *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (quoting *Shelly Tractor & Equip. Co. v. The Oil Screw Boots*, 140 F. Supp. 425, 426 (E.D.N.C. 1956)).

Plaintiff argues that it is entitled to summary judgment on Count I because it holds a valid maritime lien against the Vessel for providing necessaries in the form of repairs to its hydraulic system. According to Plaintiff, because this work constituted "necessaries" under the Act, and because it was authorized at the request of Vessel Owner, the maritime lien is valid and Plaintiff should now be allowed to foreclose the lien against the Vessel. Defendant argues that Plaintiff's repairs were unreasonable in both price and duration under the circumstances and that summary judgment is therefore improper at this stage of the proceedings, given this genuine dispute concerning an issue of material fact.

Summary judgment on Count I will be denied because there are genuine issues of material fact as to whether the repairs provided by Plaintiff to the Vessel were reasonable under the circumstances. To prevail on its maritime claim, Plaintiff must prove that its repairs to the Vessel were provided at a reasonable price and at the direction of the Vessel's owner or agent. *S.E.L. Maduro*, 833 F.2d at 1482. Plaintiff has not proven that its repairs to the Vessel were provided at

a reasonable price. Plaintiff has not submitted record evidence demonstrating, for example, that its charges for the repairs to the Vessel were customary in the industry or consistent with the prices charged by other firms. Because Plaintiff has not demonstrated that the price charged for the repairs were reasonable under the circumstances, and because this material issue is disputed vigorously by the parties, summary judgment on Count I will be denied.

### B. Breach of Contract Against Defendant Vessel Owner

Plaintiff also moves for summary judgment on Count II, a breach of contract claim against Vessel Owner. In an action for breach of a maritime contract the elements are: (1) the existence of a valid contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages. *Krauss Bros. Lumber Co. v. Dimon S.S. Corp.*, 290 U.S. 117, 124 (1933); *S.E.L. Maduro*, 833 F.2d at 1482. Plaintiff has not submitted evidence showing the value of its purported damages or whether that valuation is reasonable. Indeed, the reasonableness of Plaintiff's charges and its damages, if any, are genuine issues of material fact vigorously contested by the parties. Summary judgment is therefore improper at this time. Furthermore, the record is incomplete with respect to the existence of the parties' contract. As Defendant has noted, the record does not contain all the parties' work orders and invoices that allegedly form the basis of the parties' agreement. Some of the work orders and invoices in the record are unexecuted. And while the parties have alluded to preliminary cost estimates, the record does not contain evidence of a written agreement executed prior to the commencement of Plaintiff's work on the Vessel. Because Plaintiff has not proven the reasonable value of its alleged damages or the existence of a complete, valid contract between the parties as is necessary to prevail on a breach of contract claim, summary judgment on Count II will be denied.

For the foregoing reasons, it is hereby,

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Liability on Counts I and II of Plaintiff's Second Amended Verified Complaint [DE 47] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 20th day of March, 2023.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record